## MRS. JENNIE THOMPSON v. THE STATE.

### No. 3624.    Decided June 16, 1915.

### Rehearing denied October 13, 1915.

**Keeping Disorderly House—Sufficiency of the Evidence.**

Where, upon trial of keeping a house where prostitutes were permitted to resort and reside, and keeping a disorderly house, the same being a place where men and women met by mutual appointment for the purpose of sexual intercourse, the evidence sustained the conviction, there was no reversible error.

Appeal from the County Court at Law of Harris. Tried below before the Hon. C. C. Wren.

Appeal from a conviction of keeping a disorderly house; penalty, a fine of $200 and twenty days confinement in the county jail.

The opinion states the case.

*Heidingsfelders,* for appellant.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—An information was filed against appellant in which she was charged in two counts with unlawfully keeping and being concerned in keeping a bawdy house—a house where prostitutes were permitted to resort and reside; and with keeping a disorderly house, the same being a place where men and women met by mutual appointment for the purpose of sexual intercourse. A jury was waived, and the court adjudged her guilty, her punishment being assessed at a fine of $200 and twenty days imprisonment in the county jail.

The sole ground relied on is that the evidence does not support the conviction. Mrs. A. B. Crook testified she lived near appellant; that she had seen men and women go to this house a number of times. That they would not go together, but she would see men go, and in a short time a lady would go. They would remain an hour or hour and a half, when she noticed. That this happened most of the time in the afternoon, but at other times about dark. She did not know the purpose of the men and women, and did not know the reputation of the house.

Mrs. Schaeffer testified also she lived near appellant. That she had seen men and women go to the house, and had seen men leave the house as late as 11 or 12 o'clock at night. That the house had a bad reputation.

Mrs. Sanderson testified she had seen men and women go to this house at different times during the day. Did not know the reputation of the house, but she was a "little suspicious."

Mr. Crooker testified he raided appellant's house on the night of the 27th of last June. It was between 1 and 2 o'clock at night. That he found G. H. Collins in bed in the front room, undressed; that Miss Davis was undressed, and in her nightgown, in the room with Collins when he peeped in the house, but when he got in the house appellant and Miss Davis were in another room. He arrested all three of them.

Officer Gallney testified he was with Mr. Crooker when they made

a raid on the house. He also says that Collins was unaressed and in bed, and the two women in their night clothes.

Appellant testified that Collins and Miss Davis came to her house that night. That she knew Collins well, but did not know Miss Davis. That Collins introduced Miss Davis as his wife. That Collins complained of not feeling well, and asked permission to lie down, and she granted it to him, and he went into the front room. She says Miss Davis did not go into the front room, but having torn her dress, she took it off and was mending it when the officers came, having put on an apron. She testified she had run a rooming and boarding house in Houston for a number of years. That she had one gentleman as a roomer, who came in late at night and left early in the morning; that she also had two ladies rooming with her. She denies that anything improper occurred in her rooming house. She says she was looking for her husband that night is the reason she was up at that hour of the night.

Miss Davis testified that she did not go in the room where Collins was undressed on the bed. Says she went there with Collins after having been out taking supper with him, as Collins expressed a desire to go to Mrs. Thompson's house. She denies anything improper taking place, and denies being in her gown, as testified to by the officers. She also denies that Collins introduced her to Mrs. Thompson as his wife.

It is true that only one witness testifies that the reputation of the house was bad, but several testify to seeing men and women visit there frequently, remaining a short time, leaving separately. One officer testifies positively to finding Collins and Miss Davis in the same room, both being undressed, one being in bed, the other being in the room in her nightgown. Mrs. Thompson and Miss Davis cross each other about Collins introducing her as his wife. The trial court heard and saw the witnesses, and heard them testify, and if as a matter of fact he found as true that Miss Davis and Collins were in the same room, both being undressed, the other facts and circumstances would authorize him to find the purpose they had gone to this house that night. Others are seen going there, and we can not say that the evidence would not authorize him to find that this was a house where men and women would meet for the purpose of sexual intercourse.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied October 13, 1915.—Reporter.]